**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1575**

PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,

Plaintiff - Appellant,

v.

JO A. LEWIS; ROGER W. LEWIS; EXCEL MECHANICAL LLC,

Defendants - Appellees.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Patrick Michael Duffy, Senior District Judge.  (2:13-cv-00920-PMD)

Argued:  May 10, 2016                    Decided:  May 27, 2016

Before MOTZ, KING, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: John Robert Murphy, MURPHY & GRANTLAND, P.A., Columbia, South Carolina, for Appellant.  Bert Glenn Utsey, III, PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, P.A., Walterboro, South Carolina; Jenny Anderson Horne, JENNY HORNE LAW FIRM, LLC, Summerville, South Carolina, for Appellees.  **ON BRIEF**: Jason P. Luther, MURPHY & GRANTLAND, P.A., Columbia, South Carolina, for Appellant.  Lee Deer Cope, PETERS, MURDAUGH, PARKER, ELTZROTH & DETRICK, P.A., Hampton, South Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Pennsylvania National Mutual Casualty Company brought this declaratory judgment action against Roger W. Lewis, his wife, Jo A. Lewis, and his solely owned company, Excel Mechanical, LLC. Penn National sought a declaration that the commercial general liability policy (the Policy) it had issued to Excel did not cover the claim proffered by Mr. Lewis and Excel. After a bench trial, on the basis of extensive findings of fact and conclusions of law, the district court declared that the Policy did provide coverage to Excel and Mr. Lewis. Penn National appeals.

This action arises out of a case filed by Mrs. Lewis against Excel and her husband, in which she alleges that on September 4, 2011, she was injured in a boating accident involving a watercraft owned and operated by Mr. Lewis. Specifically, Mrs. Lewis asserts that in attempting to ground the watercraft on a sandbar, Mr. Lewis caused a collision that trapped Mrs. Lewis's lower leg between the boat and the sandbar, resulting in serious permanent injuries. Mrs. Lewis further alleges that at the time of the accident "there were two other passengers on the Boat whom [Mr.] Lewis was entertaining as business prospects of Excel" and so Mr. Lewis "was engaged in the conduct of Excel's business." In light of the purported business purpose of the trip, Mrs. Lewis, who seeks actual and

2

punitive damages, asserts that Excel is vicariously liable for Mr. Lewis's actions.

In March 2012, six months after the accident, Mr. Lewis filed a claim with Penn National, reporting that he was "in the boat . . . with a potential customer" at the time of the accident and that the trip was therefore a business-related activity covered by his company's Penn National Policy. In relevant part, that Policy provides:

> **SECTION II - WHO IS AN INSURED**
> 1.  If you are designated in the Declarations as:
> * * *
> c.  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insured, but only with respect to their duties as your managers.

The Policy further provides liability coverage for damages that an "insured becomes legally obligated to pay" as a result of "bodily injury or property damage."

In January 2013, Mrs. Lewis filed a federal maritime tort action against Mr. Lewis and Excel, seeking compensation for her injuries. In response, Penn National initiated this action against the Lewises and Excel, seeking a declaratory judgment that the Policy does not cover the accident, and that Penn National therefore has no duty to indemnify Mr. Lewis or Excel or defend them in the underlying action.

At the bench trial, Penn National maintained that the boat trip was not business-related and that Mr. Lewis was only claiming it was to obtain coverage. Penn National pointed to the fact that no one, besides Mr. Lewis, testified that they had thought the trip was business-related, that Mr. Lewis had filled the boat's gas tank that day but not expensed the cost to Excel, and that he had not submitted his Penn National claim until six months after the accident.[1]

Mr. Lewis testified at trial that he routinely entertained potential customers on his boat to cultivate business relationships. He conceded that he had not bought gas that day but contended that he did expense to Excel the gas he had bought a week prior in anticipation of the outing. Mr. Lewis also explained that he did not file his claim for coverage under the Penn National Policy immediately because his life was "in

---

[1] Penn National sought to admit evidence related to a State Farm insurance policy, under which the Lewises had received $5,000 for medical payments resulting from the accident. Mr. Lewis had first contacted State Farm only ten days after the accident, which Penn National argued made his much later Penn National claim suspect. A State Farm agent stated in a deposition that, had State Farm been aware the accident was business-related, the Lewises would not have qualified for the payouts they received, but State Farm's claim file did not contain any indication that whether the trip was business-related had ever come up; there appeared to have been no inquiry from State Farm and no representations from Mr. Lewis either way. Contrary to Penn National's contention on appeal, the district court did not abuse its discretion in excluding all evidence related to the State Farm policy as "irrelevant" and potentially "confusing [to] the [advisory] jury."

4

turmoil" while he helped his wife recover from her injuries, and because he only discovered he had watercraft coverage when reviewing his policy months later in connection with an unrelated event.

The district court found Mr. Lewis credible, based on his "presentation and demeanor on the witness stand." The court concluded that the Penn National policy was unambiguous, and that "at the time of the Trip and resulting Accident, Mr. Lewis was operating the Boat in the course of his employment and with respect to the conduct of Excel's business and his duties as the manager of Excel," as required for coverage under the Policy. The court noted that "[t]he fact that the Trip included or may have included elements of familial entertainment and friendly fellowship does not deprive the Trip of its business purpose."[2] Accordingly, the court declared that Lewis's claim qualified for coverage, indemnification, and defense under the Penn National Policy.

---

[2] An advisory jury convened by the district court, with the consent of the parties, agreed with this conclusion. The court instructed the advisory jury that it must decide whether Lewis "engaged in any [business] activities" during the trip. The advisory jury returned a unanimous verdict that Lewis had engaged in "activities with respect to the conduct of Excel Mechanical's business" and "with respect to his duty as Excel Mechanical's manager during the boat trip."

5

Having carefully considered the controlling law and the parties' briefs and oral arguments, we affirm on the reasoning of the thorough opinion of the district court.

<u>AFFIRMED</u>